IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
)
          Plaintiff, ) Civil Action No. 2:15-cv-256
)
v. ) Judge Mark R. Hornak
)
FEDEX GROUND PACKAGE )
SYSTEM, INC. )
)
          Defendant. )

## OPINION

**Mark R. Hornak, United States District Judge**

The big issues in this case are whether the Equal Employment Opportunity Commission ("EEOC") can bring a federal civil lawsuit to end what it claims to be employment practices made unlawful by the Americans with Disabilities Act ("ADA"), achieve compensatory relief for specific job applicants and employees as it does so, and whether that effort requires the EEOC's compliance with Rule 23 doctrines. The Court concludes that the answer to the first two questions is yes, and to the third, no.

FedEx Ground Package System, Inc. ("FedEx Ground") has moved to dismiss a Complaint filed by the EEOC alleging unlawful discrimination on the basis of disability. *See* ECF No. 47; ECF No. 1. In the alternative, FedEx Ground has moved to strike the EEOC's "pattern or practice" related allegations in its Complaint. ECF No. 47. The main dispute now centers on the scope of the EEOC's litigation authority, with FedEx Ground arguing that the EEOC must bring these claims as hundreds of individual federal lawsuits and the EEOC countering that no, it can bring them in just this one.

The issues were robustly briefed, *see* ECF Nos. 48; 56; 63; 67; 74, and the Court has carefully reviewed all submissions and held a lengthy oral argument on September 11, 2015. Because the Court concludes that the EEOC has statutory litigation authority to bring this suit, that Circuit precedent does not pretermit or limit the EEOC's statutory litigation authority in this case, and that the ADA does not require identification of any singular discriminatory procedure or policy in this context, FedEx Ground's Motions are denied.

I.  **FACTUAL BACKGROUND**

The United States Equal Employment Opportunity Commission is charged with enforcing federal laws that prohibit various forms of discrimination against job applicants and employees. *See* 42 U.S.C. § 2000e-5; EEOC, *Overview*, http://www.eeoc.gov/eeoc/index.cfm (last visited Jan. 4, 2016). One form of employment discrimination outlawed in the United States is discrimination on the basis of disability. *See* 42 U.S.C. § 12117(a) (Section 107(a) of the Americans with Disabilities Act, incorporating by reference Section 706 of the Civil Rights Act of 1964 ("Title VII")); 42 U.S.C. § 1981a(2) (Section 102 of the Civil Rights Act of 1991). The EEOC brought this suit to remedy what it alleges is such unlawful discrimination by FedEx Ground.

The EEOC says that FedEx Ground violated the ADA by discriminating against deaf and hard-of-hearing individuals who worked in, and applied for, Package Handler positions with the company. *See* ECF No. 1. The stated qualifications for the job are modest. To be hired for such entry-level positions, applicants must be at least eighteen years old and pass a criminal background check. *Id.* at 6, ¶¶ 16–17.[1] Applicants complete an application, attend a mandatory sort-observation tour (where they see an active package handling shift, loading and unloading

---

[1] For purposes of addressing FedEx Ground's Motions, the Court accepts as true the factual allegations in the EEOC's Complaint. *See Flore v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).

delivery vehicles, the conveyor systems, scanning, sorting, and routing of packages), and participate in an interview. *Id.* at 6, ¶¶ 20–22.

Package Handlers perform a variety of tasks that would require accommodation if they are to be performed by deaf or hard-of-hearing individuals. For example, the scanners used to scan package barcodes typically emit an audible beep, *id.* at 6, ¶ 23, and regular meetings and training sessions often contain auditory presentations and/or videos, *id.* at 7, ¶ 28. The EEOC says that in all phases of hiring, training, orienting, and employing Package Handlers, FedEx Ground failed to make reasonable accommodations required by law for deaf and hard-of-hearing individuals. Specifically, the EEOC charges that FedEx Ground failed to engage in a good faith interactive process to identify those reasonable accommodations, and that such failure resulted in impermissible employment discrimination. *Id.* at 9, ¶ 31.

Seventeen (17) deaf or hard-of-hearing individuals filed Charges of Discrimination against FedEx Ground, which the EEOC then consolidated as part of a nationwide systemic investigation of potential ADA violations. *Id.* at 4–5, ¶¶ 8–9. The EEOC then issued Letters of Determination notifying FedEx Ground that it had reasonable cause to believe FedEx Ground had violated the ADA. The parties then engaged in a process of conciliation, conference, and persuasion. *Id.* at 5, ¶ 9–10. Those efforts were unsuccessful and the EEOC brought this suit for the benefit of the seventeen Charging Parties and other "similarly aggrieved individuals." *See id.* It seeks a permanent injunction to prevent FedEx Ground from engaging in disability discrimination; an order directing FedEx Ground to implement policies, practices, and programs to provide equal employment opportunities and reasonable accommodations for aggrieved individuals; back pay; compensation for past and future pecuniary and non-pecuniary losses; instatement of aggrieved individuals or front pay; and punitive damages. In response, FedEx

Ground filed the pending Motion to Dismiss Plaintiff's Systemic Discrimination Complaint or, in the alternative, Motion to Strike Plaintiff's Pattern-or-Practice-Related Allegations from the Complaint. ECF No. 47.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is evaluated under the standards set forth in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombley*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party—here, the EEOC. *See Flore v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015). Further, the Court may not make findings of fact or resolve any factual disputes. *Id.*

### B. Motion to Strike

Under Rule 12(f), the Court has broad discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[I]f class treatment is evidently inappropriate from the face of the complaint," Rule 12(f) can be invoked to strike class-like allegations. *Zarichny v. Complete Payment Recovery Serves., Inc.*, No. 14-3197, 2015 WL 249853, at *2 (E.D. Pa. Jan. 21, 2015); *see also Semenko v. Wendy's Int'l, Inc.*, 12-0836, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013) (striking ADA class

allegations because "no amount of discovery [would] demonstrate that the class can be maintained.").

## III. LEGAL ANALYSIS

FedEx Ground moved to dismiss the Complaint, or in the alternative to strike what it styles as "pattern or practice related" allegations in it, based on an essentially unitary argument: that the EEOC must prove that unlawful disability discrimination resulted from some discrete and specific policy or procedure by FedEx Ground and that each deaf and hard-of-hearing employee and applicant is "qualified" under the ADA. This, FedEx Ground maintains, is an inherently fact-specific and individualized analysis precluding any sort of class-wide or "pattern or practice" treatment and therefore this suit cannot go forward in its current form. Bottom line, argues FedEx Ground, the EEOC and/or individual applicants or employees must pursue ADA claims in a series of one-off federal lawsuits. As will be seen, however, FedEx Ground underestimates the EEOC's statutory litigation authority and confuses what the EEOC can allege with how it can prove the allegations. As such, the motions will be denied and the suit can proceed to the next step.

### A. The EEOC's Litigation Authority

The EEOC has broad power to "prevent any person from engaging in any unlawful employment practice." 42 U.S.C. § 2000e-5. Specifically, the EEOC is authorized to bring civil actions against discriminating employers. *Id.* § 2000e-5(f)(1). Of particular relevance here are the twin aims of such EEOC litigation. First, and most obviously, the EEOC can bring a suit on behalf of particular individuals, lending its institutional and societal heft to an effort to remedy discrete events of employment discrimination. EEOC litigation also serves an entirely separate and distinct purpose: the vindication of rights protected by federal anti-discrimination laws. That

5

purpose exists wholly apart from securing relief for individual victims; indeed the injury that the EEOC was designed to remedy is the violation itself and not only the actual harm imposed on an employee or applicant for employment. This means that the EEOC is not simply a proxy for individual employees, *see Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1980); rather it litigates in the public interest, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002).[2] It is with that broad statutory directive in mind that the Court looks to EEOC's authority to bring disability discrimination suits, and in particular, this one.

As part of the ADA's comprehensive mandate to eradicate unlawful disability discrimination, section 706 of the ADA (incorporating the authorizing provision of Title VII) confers direct, statutory authority on the EEOC to litigate claims of systemic employment discrimination for the benefit of a group of aggrieved individuals. On this point, the parties seem to agree—or at least they mutually came around at oral argument. As well they should. The Supreme Court has repeatedly held that the EEOC is charged with ensuring compliance with federal law. *See, e.g., Gen. Tel. Co.*, 446 U.S. at 324 ("Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."). So as a starting point, the EEOC plainly has authority to bring suit seeking to eradicate employment discrimination on the basis of disability.

---

[2] "[W]e are persuaded that, pursuant to Title VII and the ADA, whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function." *Waffle House, Inc.*, 534 U.S. at 296.

6

## B. The Americans with Disabilities Act of 1990

The Americans with Disabilities Act of 1990 provides a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA prohibits employers from, among other things, failing to provide reasonable accommodations to disabled employees.[3] *See* 42 U.S.C. § 12112(b)(5). To make out an ADA claim based on a failure to accommodate, an individual must prove "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered [a] . . . refus[al] to make reasonable accommodations." *Hohider v. UPS, Inc.*, 574 F.3d 169, 186 (3d Cir. 2009). And while the ADA itself does not specifically mention an "interactive process" with respect to reasonable accommodations, our Circuit has recognized that:

> '[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.' 29 C.F.R. § 1630.2(o)(3). Similarly, the EEOC's interpretive guidelines provide that: 'Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability.' 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999). The EEOC bases its claims on this principle.

---

[3] "The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)).

7

A predicate to claims under the ADA (including failure to accommodate claims) is that claimants must be "qualified individuals with disabilities," that is to say, they must be people who have a disability[4] and "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Our Circuit has held that this means that plaintiffs (1) "must satisfy the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." and (2) "must be able to perform the essential functions of the position held or desired, with or without reasonable accommodation." *Taylor*, 184 F.3d at 311 (internal citations and alterations omitted). In this way, suits under the ADA differ from other discrimination suits under Title VII.[5]

Whether this predicate of "qualification" renders the EEOC's suit, which would benefit the seventeen Charging Parties and other unnamed "aggrieved individuals," inappropriate for any form of collective litigation or remedy is the central issue here.

### C. *Hohider* and Rule 23

FedEx Ground's primary argument is that under *Hohider v. UPS, Inc.*, 574 F.3d 169 (3d Cir. 2009), the EEOC's "varied and divergent claims cannot be litigated on a class-wide or pattern-or-practice basis as a matter of law." ECF No. 48, at 6; ECF No. 48, at 21 ("*Hohider* controls this case."). Because consideration of *Hohider* is central to the parties' arguments, a more extended discussion is warranted.

---

[4] "A 'disability' is defined as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Taylor*, 184 F.3d at 305–06 (citing 42 U.S.C. § 12102).

[5] "[T]he ADA explicitly incorporates this inquiry into its definition of prohibited discrimination, and thus generally requires an evaluation of whether a disabled individual is 'qualified' as defined under the statute to determine not only whether discrimination on the basis of disability has occurred, but more fundamentally, whether such discrimination against that individual is unlawful." *Hohider*, 574 F.3d at 192.

8

According to FedEx Ground, the Third Circuit in *Hohider*, and district courts in the Circuit subsequently applying *Hohider*, have held that the "qualified individual" inquiry—a prerequisite for showing discrimination under the ADA—is *always* far too fact-specific and individualized to permit collective treatment in any federal court litigation. ECF No. 48, at 14. Further, FedEx Ground says "*Hohider* applies with full force here." *Id.* at 15. The EEOC counters that reliance on *Hohider* is totally inapposite. *See* ECF No. 56, at 13. It says that *Hohider*'s holding applies only to *private* Rule 23 class action suits under the ADA. Therefore, the EEOC claims, ADA "class actions"[6] are perfectly appropriate when litigated by the EEOC. The Court concludes that the EEOC view is correct, at least in the context of this case.

In *Hohider*, a group of private plaintiffs sought to bring a Rule 23 class action to vindicate alleged employment discrimination on the basis of disability. 574 F.3d at 172. The nub of their claims was that the employer, UPS, discriminated against them by failing to accommodate their disabilities after returning to work from medical leaves of absence. *Id.* The district court certified the class under Federal Rules of Civil Procedure 23(a) and (b)(2). *Id.* at 174. That trial court decided that the issues of "qualification" under the ADA and liability due to UPS's policy could be separated, using the two-step *Teamsters*[7] framework. *Id.* Our Circuit reversed. It held that "in light of the substantive requirements of the ADA . . . [plaintiffs'] claims cannot be adjudicated within the parameters of Rule 23" because the issue of whether the individuals are qualified under the ADA "encompasses inquiries . . . too individualized and divergent with respect to this class to warrant certification under Rule 23(a) and (b)(2)." *Id.* at 185–86.

---

[6] The EEOC disclaims that this lawsuit is a "class action" at all, even though it sprinkles that phrase across its briefs.

[7] *Int'l Bhd. of Teamsters v. United States et al.*, 431 U.S. 324 (1977).

9

As a preliminary matter, it is plain that *Hohider*'s central holding addresses only private class actions under Rule 23. *Hohider* says so. 574 F.3d at 183, 203. The Circuit's reasoning is clear—Rule 23's commonality and typicality strictures require that there be a high level of homogeneity among the private class members. In *Hohider*, there was no such unity because the plaintiffs, in a wide array of jobs, suffered from all manner of disabilities and the only thing bringing them together was UPS's alleged policy of not accommodating them upon returning from their medical leaves of absence. There was no unifying disability, or even a unifying job, position, or decisional process that brought them together. Thus, a court would have to determine whether each individual "with or without reasonable accommodation, [could] perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). With the extreme diversity of job positions, claimed disabilities, and return-to-work decisions of those potential class plaintiffs, the Circuit held that it was inappropriate to litigate the claims on a class-wide basis because it would be super difficult, if not impossible, to satisfy Rule 23's commonality and typicality requirements.

It is also plainly evident that the EEOC is not subject to Rule 23's requirements. *Gen. Tel. Co.*, 446 U.S. at 324 (the EEOC's "authority to bring such actions is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit."). That is so given the independent litigation interests that the EEOC has, apart from those of any individual plaintiffs. *See id.* at 329 ("it is clear that the Rule was not designed to apply to EEOC actions brought in its own name for the enforcement of federal law"); *see also EEOC v. Northwest Airlines, Inc.*, 216 F. Supp. 2d 935, 938 (D. Minn. 2002). Thus, the Court concludes that *Hohider*'s central holding simply does not apply in this case.

In its later briefs, FedEx Ground appeared to ease off its argument that *Hohider* is a complete bar to litigating ADA cases on a class-wide basis.[8] Instead, FedEx Ground asserts that under *Hohider*'s core principles, the divergent and individualized inquiries into "qualified" status remain and thus, "individualized issues . . . overwhelm the kinds of diverse and varied ADA claims pressed by the EEOC" rendering class-wide treatment inappropriate. ECF No. 48, at 15. That argument is better-taken, but the Court is unconvinced that it pretermits this lawsuit, at least not now. The EEOC's claims are narrow compared to those at issue in *Hohider*. Here, the claimants and potential beneficiaries of relief facially share a common disability—being deaf or hard-of-hearing.[9] And the claimants are employed in or applicants for a common position: Package Handler. Further, the minimum qualifications for becoming a Package Handler (being eighteen years old and passing a criminal background check), *see* ECF No. 1, at 6, ¶¶ 16–17, are commonly applicable, easily identifiable, and provable if true, even with respect to the as-yet-unnamed aggrieved individuals.[10] Further still, as will be seen in Section III.D below, the EEOC is not bringing a "pattern or practice" claim despite the false dichotomy FedEx Ground attempts to draw. So, no inference of discrimination needs to be shown in the first instance and individual proof frameworks, *see* ECF No. 56, at 23, could well be used to prove the claims. Therefore, because the EEOC is not subject to the requirements of Rule 23 when litigating as a plaintiff, and because the EEOC has pled that the Charging Parties and aggrieved individuals are indeed

---

[8] *Hohider* was directed to "private-plaintiff class actions under the ADA," and "whether the class action [before the court] can go forward under the *Teamsters* framework in a manner consistent with Rule 23." *Hohider*, 574 F.3d at 183. Whatever the breadth of *Hohider*, the Court does not read it as inherently "amending away" the EEOC's statutory litigation authority. *See id.* at 180 n.12.

[9] While FedEx Ground raises the fact that hearing loss falls on a spectrum (allegedly making these a diverse set of disabilities), the Court concludes those concerns are a bit overblown in this context. The disabilities are not so divergent as to be of a completely different species; rather they share common characteristics and seem to require similar accommodations.

[10] *Compare with Hohider*, 574 F.3d at 174 n.6.

qualified and possess the noted high level of factual convergence under the ADA, the Court concludes that neither *Hohider* itself, nor its broader analytical construct, bar the litigation of this case by the EEOC.

The issue then appears to boil down to one of case management, with FedEx Ground cautioning the Court about the anticipated need to hold hundreds of "mini-trials" with the EEOC's use of individual proof models as to each individual employee or applicant. *See* ECF No. 63, at 11. That and the resulting discovery, FedEx Ground says, would be "incredibly burdensome and unmanageable not only for the parties, but also for the Court." *Id.* n.2. While the Court appreciates this legitimate concern, the fact that it may be hard[11] does not resolve the issue. This Court is expected to take on difficult tasks every day, and is prepared to do so in this case.[12]

### D. The Nature of the EEOC's Claims

At bottom, this dispute is about what exactly the EEOC is alleging. FedEx Ground attempts to deposit the ADA claims brought by the EEOC into one or another of only two

---

[11] And the Court is not so sure it will be. First, employees and applicants for only one position are involved. Second, only one type of disability is involved. Third, as the Court observed at oral argument, industrial hygienists, for decades, have been able to objectively measure and evaluate hearing acuity in workplace settings. Fourth, it is not obvious that novel or cutting-edge "remedial" technology is necessarily involved here (consider closed-captioning/SAP feeds on televisions, for instance). The Court does not doubt the good faith of FedEx Ground's case management concerns, given that they come at a very early stage of the case, when the slate is somewhat blank. By the same token, the Court believes that these parties will likely bring to the case management table a better-than-usual ability to gather facts about FedEx Ground's operations and employee/applicant pool.

[12] On the ground, this case and *Hohider* appear to be quite different. *Hohider* involved (allegedly) over 36,000 potential claimants. 574 F.3d at 172 n.4. So far, in this case there are fewer than 200. Hohider himself had a multitude of potentially impairing physical limitations—disc herniation, left leg radiculopathy, reflex sympathetic dystrophy, and an undefined neck injury. He was a part-time loader/unloader, a loader, a sorter, and a package-car driver. *See id.* n.3. The various jobs at UPS in *Hohider* had a seventy pound lifting requirement, which the plaintiffs there said was not necessarily "job-related," and the *Hohider* plaintiffs claimed that UPS used, in every case, a ten-step job re-entry accommodation process involving multiple management assessments. In contrast, this case involves one job, with two rather objective core job qualifications (being eighteen and having a clean criminal record), and one form of asserted physical limitation that can be objectively measured with a rather standard hearing test. *See, e.g.*, Disability Evaluation Under Social Security, § 2.00(B) Special Senses And Speech – Adult, *available at* https://www.ssa.gov/disability/professionals/bluebook/2.00-SpecialSensesandSpeech-Adult.htm; EEOC, General Information About Hearing Impairments, http://www.eeoc.gov/eeoc/publications/qa_deafness.cfm (noting the Centers for Disease Control and Prevention definitions of hearing impairments). The factual context of this case shows why *Hohider* doesn't match up with the claims actually being asserted by the EEOC here.

buckets, either: (1) discrimination relating to a specific discriminatory procedure or policy that can be proven only with the *Teamsters* evidentiary framework, or (2) claims that do not identify a specific procedure or policy and thus cannot, under any circumstances, be subject to any form of collective treatment. *See* ECF No. 48, at 6. The EEOC maintains that it is simply bringing an employment discrimination case, with the discrimination affecting a lot of individuals (starting with the seventeen specific claimants named in its Complaint) with one overall disability—they have trouble hearing. ECF No. 56, at 7. It says that whether it uses any specific proof framework or identifies one specific unlawful procedure or policy is irrelevant to whether it may exercise its statutory authority to advance the claims it pleads.

All parties agree—and the statute and case law support the view—that the first step in an ADA discrimination case is to show the aggrieved individuals are "qualified." Where FedEx Ground's argument derails is its position that *Hohider* facially precludes any inquiry into qualification in a litigation context other than a single-plaintiff, one-off federal lawsuit. *See* Section III.C, *supra*. Where it leaves the tracks altogether is what FedEx Ground says is a *necessary* next step: "[t]o show that FedEx Ground engaged in a pattern or practice of discrimination—*i.e.*, to create an inference of discrimination for purposes of the first *Teamsters* phase." ECF No. 48, at 16.

As the EEOC points out, "pattern or practice" is not itself a legal claim. It is one evidentiary framework with which discrimination may be proved. *See Hohider*, 574 F.3d at 184 (holding the district court erred in using "pattern or practice" elements to define a discrimination claim); *see also, e.g. Serrano v. Cintas Corp.*, 699 F.3d 884, 898 (6th Cir. 2012) ("*Teamsters* provides an evidentiary framework pursuant to which the EEOC may seek to prove its allegations of intentional discrimination, not an independent cause of action.") (citing *Hohider*,

13

574 F.3d at 183); *EEOC v. PBM Graphics, Inc.*, 877 F. Supp. 2d 334, 343 (M.D.N.C. 2012) (pattern or practice cases are not "separate and free-standing cause[s] of action."). Nevertheless, in the face of the EEOC's invocation of its Section *706* authority, ECF No. 1, at 1, ¶ 1, FedEx Ground claims that the EEOC must necessarily meet the standard it would need to meet under Section *707*. ECF No. 63, at 2. As a logical matter, that does not add up. What the EEOC must demonstrate, as discussed above, is a *prima facie* case of disability discrimination—not necessarily the existence of one specific policy or procedure, or a "pattern or practice." And fatal to FedEx Ground's attempt to pigeonhole this case into being one about a "pattern or practice" is the Supreme Court's pronouncement that federal court complaints need not commit to a specific evidentiary framework, especially where the appropriate one may not become apparent until after discovery. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508–10 (2002).[13]

Moreover, the Court concludes that this suit *could* fairly and properly be characterized as alleging an unlawful "centralized or blanket policy adopted or applied by FedEx Ground." ECF No. 48, at 19. The EEOC pleads that "FedEx has not implemented a corporate-wide procedure" for accommodating deaf or hard-of-hearing individuals. ECF No. 1, at 9, ¶ 32. This is not, as FedEx Ground would have the Court believe, the "antithesis" of a standard operating procedure. *See* ECF No. 48, at 19. The law imposes affirmative obligations on employers to engage in interactive processes as they make reasonable accommodations for otherwise qualified

---

[13] It does appear to the Court that to a degree, the EEOC is trying to have it both ways. It invokes its Section 706 authority to bring this lawsuit in furtherance of the Charges of Discrimination referenced in its Complaint. Then, at argument, it referenced the 168 other claimants it has identified and used verbiage that began to drift into Section 707 territory. Also, whether as a factual matter it "conciliated" the breadth of the case it seeks to litigate here (FedEx Ground argues that it did not) may be a matter yet to be resolved, since even under the modest *Mach Mining* standard, *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015), FedEx Ground's argument would appear to have an inherent factual overlay not resolvable at this juncture. Further, as this Court has noted in other settings, *see EEOC v. Ruby Tuesday Inc.*, 919 F. Supp. 2d 587, 592–93 (W.D. Pa. 2013), the EEOC, like any other litigant, has a duty to put its cards on the table, face up, as to the relief it seeks, for whom it seeks it, and the factual and legal basis for its doing so. For the reasons the Court has stated here, in this case those matters go to the management of the litigation and the disclosure and discovery obligations of the parties, not whether the Complaint plausibly states a legally cognizable claim.

individuals with disabilities. *See Taylor*, 184 F.3d at 311. A blanket failure to engage in *any* interactive process or to make *any* reasonable accommodations can, from where the Court sits, constitute a standard operating procedure resulting in unlawful discrimination. Without an affirmative obligation, this sort of "failure to seek out reasonable accommodations" claim might fall short of the mark. But faced with a legal duty to seek reasonable accommodations, an employer's complete and uniform failure to do so can fairly be conceptualized as a standard operating procedure of unlawful conduct.

Additionally, FedEx Ground's assertions of prejudice at having to litigate against "hundreds of unnamed aggrieved individuals" appear overstated. EEOC has provided, and at oral argument FedEx Ground acknowledged possessing, a list of 168 named individuals that are the subject of this suit. And while the EEOC generally "may not use discovery . . . as a fishing expedition to uncover more violations," *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 674 (8th Cir. 2012), *cert. granted*, 136 S. Ct. 582 (Dec. 4, 2015) (No. 14-1375) (internal quotation marks omitted), here the EEOC has already cast its net, *see* ECF No. 1, at 5, ¶ 9 (noting the nationwide systemic investigation it conducted).[14] If some other aggrieved individuals—those meeting the statutory criteria for the claim as pled—are added to the haul, FedEx Ground will not necessarily suffer impermissible prejudice. The EEOC's central claim is based on an alleged failure to engage in an interactive process in order to give disabled individuals a statutorily-mandated reasonable accommodation. If it turns out that FedEx Ground indeed failed to do that, all individuals who were unlawfully discriminated against could be entitled to relief, even those

---

[14] The Court also notes that under *Mach Mining*, the EEOC must provide an employer with notice of its specific allegation and offer the employer an opportunity to remedy it. Beyond that, the EEOC has significant discretion to investigate discrimination claims and upon so doing, to litigate on behalf of a potential group of aggrieved people. *See id.* at 1652 (noting the EEOC satisfies its conditions precedent by telling the employer what practice "has harmed which person or class"); *see also EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16, 17 (3d Cir. 1989) (the EEOC can maintain class action suits even where it does not attempt to conciliate on behalf of each member or potential member of the class).

uncovered in discovery.[15] In short, sometimes permissible fishing expeditions legitimately catch fish.

The EEOC has pled facts sufficient to state a claim for disability discrimination. The EEOC, in its Complaint, alleges that the Charging Parties and other aggrieved individuals are qualified and disabled within the meaning of the ADA, ECF No. 1, at 6, ¶ 19; the aggrieved individuals were either applicants for or employed as Package Handlers, *id.* at 5, ¶ 15; and they suffered unlawful discrimination because FedEx Ground failed to accommodate their disabilities,[16] *id.* at 9–15, ¶¶ 31–40. That is sufficient to state its claim for discrimination on the basis of disability.

### E. FedEx Ground's Motion to Strike

FedEx Ground also argues that the EEOC's "pattern or practice" related claims and/or any references to as-yet-unnamed aggrieved individuals should be stricken under Rule 12(f). Rule 12(f), however, "may not serve as an avenue to procure the dismissal of all or part of a Complaint." *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 720, 724 (W.D. Pa. 2013) (vacated in part upon reconsideration). "Striking some or all of a pleading is considered a drastic

---

[15] In fact, the lack of impermissible prejudice is reinforced by the fact that it is impossible to provide relief to unnamed individuals. If they remain unnamed, the EEOC cannot prove that they suffered discrimination and if they do not exist, there is no one to compensate. Nonetheless, if it turns out that some unjust or unfair prejudice on the part of FedEx Ground is discerned as the case unfolds, that issue can be litigated on a tangible record then developed.

[16] FedEx Ground takes issue with what it characterizes as the broad array of disabilities alleged in the Complaint. *See* ECF No. 48, at 16 (noting large variations in levels of hearing impairment). While the Court recognizes that hearing loss falls along a spectrum and that there are a variety of potential accommodations raised by the EEOC, the problem FedEx Ground asserts does not necessarily exist since the disabilities alleged are of a kind. The EEOC is not alleging, for example, disability discrimination on behalf of deaf individuals, blind individuals, individuals who must use wheelchairs, and individuals who cannot use their arms, all in the same suit. Here, it appears to the Court that an accommodation for the most severely disabled person (one who is completely deaf) would also serve someone who had a lesser degree of hearing loss (*e.g.*, close captioning on training videos). At this juncture, the Court divines no unfair or unjust prejudice FedEx Ground would face by litigating all of these related claims, for related disability discrimination, as to one specific job classification, which has modest entry qualifications, in one lawsuit. More than that, it would appear that if the EEOC were forced to file (and FedEx Ground forced to defend) 168 separate, "related" lawsuits, at 168 docket numbers, and then litigate them *seriatim*, the case management and prejudicial impact would actually be much, much greater than exists here.

remedy to be granted only when required for the purposes of justice." *Id.* Justice does not so require here.

FedEx Ground's tacked-on Motion to Strike appears to be another shot at dismissal if the Motion to Dismiss didn't work out. There is little in the record that supports the argument that "pattern or practice" claims are here immaterial, impertinent, or scandalous as those terms are used in Rule 12(f).[17] Indeed, as discussed above, FedEx Ground's alleged failure to accommodate deaf and hard-of-hearing employees and applicants is the heart of the case. The EEOC has given FedEx Ground a list of some 168 aggrieved individuals, FedEx Ground is certainly on notice of the violations of federal law the EEOC alleges, and the EEOC has pled sufficient facts to state a claim upon which relief can be granted. Those claims are factually and legally plausible. Thus, there is no reason to strike anything under Rule 12(f).

## IV. CONCLUSION

For the foregoing reasons, FedEx Ground's Motion to Dismiss and in the alternative Motion to Strike is DENIED.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: January 25, 2016
cc: All counsel of record

---

[17] Such as has been found when pleadings contain *ad hominem* attacks, *Vay v. Huston*, No. 14-769, 2015 WL 4461000 (W.D. Pa. July 21, 2015); *Collura v. City of Philadelphia*, 590 F. App'x 180, 185 n.7 (3d Cir. 2014) (pleadings calling defendants "scumbags" and "creeps"), or which contain hypothetical parades of horribles resulting from the alleged conduct, *Stiegel v. Peters Twp.*, No. 12-377, 2012 WL 3096663, at *7 (W.D. Pa. July 30, 2012). Generally, 12(f) motions to strike are highly disfavored. *See Cestra v. Mylan Inc.*, No. 14-825, 2015 WL 2455420, *7 (W.D. Pa. May 22, 2015).