# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Equal Employment Opportunity
Commission,

                              Plaintiff,

        v.

FedEx Ground Package System, Inc.,

                              Defendant.

Civil Action No. 15-cv-00256

Hon. Mark R. Hornak

### CONSENT DECREE

1.      The parties to this Consent Decree ("Decree") are plaintiff U.S. Equal

Employment Opportunity Commission ("EEOC"), an agency of the United States government,

and defendant FedEx Ground Package System, Inc. ("FedEx Ground").

2.      This Decree is the product of joint negotiation between EEOC and FedEx Ground

to reach a negotiated resolution of outstanding claims. The terms of the Decree are not to be

construed as having been authored by one party.

3.      On September 30, 2014, EEOC filed the Complaint in this lawsuit and on

February 6, 2019, it filed the Supplemental Complaint. EEOC alleges that FedEx Ground

violated Sections 102(a), (b)(5)(A) and (B) of Title I of the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12112(a), (b)(5)(A) and (B).

4.      EEOC alleges that FedEx Ground violated the ADA by discriminating against

deaf or hard-of-hearing individuals in the hiring process for the Package Handler position and by

failing to provide reasonable accommodations to deaf or hard-of-hearing Package Handlers.

FedEx Ground has denied EEOC's allegations, maintaining that it did not engage in

discriminatory refusal to hire deaf or hard-of-hearing applicants for Package Handler positions, and did not fail to meet its obligation to provide effective reasonable accommodations to deaf or hard-of-hearing Package Handler applicants or Package Handlers.

5. EEOC and FedEx Ground desire to resolve this Action and stipulate and consent to the entry of this Decree as final and binding between EEOC and FedEx Ground. The Decree represents a compromise of disputed claims that the Parties recognize would require additional protracted litigation to resolve. It does not constitute an adjudication by this Court on the merits of the allegations of the Complaint and the Supplemental Complaint or on the defenses thereto. Nothing contained in this Decree shall be construed as an admission by either Party as to the merits of the claims or defenses of the other Party.

6. The Parties agree and stipulate that: this Court has jurisdiction over the subject matter of this litigation and over the Parties for the term of the Decree; this Court has the authority to enter and enforce the Decree; venue in this Court is proper; and all administrative prerequisites and/or conditions precedent to the Action have been met.

7. FedEx Ground agrees and stipulates that EEOC has named all necessary parties in this Action and that FedEx Ground has the authority and capacity to provide in full the monetary, injunctive, and other equitable relief required by the Decree.

## DEFINITIONS

8. The terms below, when used in the Decree, have the following meanings. Terms defined in the singular shall have the same meaning when used in the plural, and *vice-versa*.

    a. **Action**:  The civil action filed by EEOC against FedEx Ground at Case No. 15-cv-00256 before the U.S. District Court for the Western District of Pennsylvania, inclusive of EEOC's Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 270).

b. **ADA**:  The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12111–12117.

c. **ASL**:  American Sign Language, an independent, visual/spatial language used by individuals who are deaf or hard-of-hearing.

d. **Caption(ing)**:  The contemporaneous displayed transcription or description of all dialogue or other audibly conveyed information in a Video.

e. **Charges**:  The charges of discrimination identified in the Complaint and Supplemental Complaint, including those charges filed by the Charging Parties.

f. **Charging Party**:  Persons who filed charges of discrimination identified in the Complaint or Supplemental Complaint who are covered by the allegations of discrimination in this Action and for whom EEOC seeks relief, identified in Exhibit A.

g. **Claimants**:  Persons covered by the allegations of discrimination in this Action and for whom EEOC seeks relief, identified in Exhibit B.

h. **Court**:  U.S. District Court for the Western District of Pennsylvania.

i. **Deaf or hard-of-hearing**:  Pursuant to Section 12102 of the ADA, a physical or mental impairment that substantially limits the major life activities of hearing, speech, and/or communication; a mental or physical impairment that substantially limits the operation of the body's auditory function; and/or a record of such impairment.

j. **Decree**:  This Consent Decree, embodying the terms of the Parties' resolution of the Action, including all Exhibits.

k. **EEOC**:  U.S. Equal Employment Opportunity Commission.

l. **Effective Date**:  The date on which the Court enters the Consent Decree.

m. **Exigent Circumstances**:  Unforeseeable events causing material disruption or alteration of FedEx Ground's business or operations, including but not limited to natural disasters, acts of God, pandemics, security breaches, and acts of terrorism. These examples are intended to inform the meaning of the term.

n. **Facility**:  Any United States FedEx Ground hub or station where Package Handlers work.

o. **FedEx Ground**:  FedEx Ground Package System, Inc., and its officers, agents, employees, assigns, and successors.

3

p.  **Fund Administrator**:  The administrator of the Qualified Settlement Fund selected by the Parties.

q.  **Internal Monitor**:  An executive at the level of Vice President or above appointed by FedEx Ground to serve as the Internal Consent Decree Monitor for the Decree, consistent with paragraph 49.

r.  **Manager**:  An employee at a FedEx Ground Facility with supervisory responsibilities over Package Handlers and/or authority to engage in the interactive and reasonable accommodation processes on behalf of FedEx Ground, including but not limited to operations, sort, area, hub, service, and station managers.

s.  **Package Handler**:  A FedEx Ground employee employed at a Facility responsible for the physical loading, unloading, and/or sorting of packages by hand, including lifting, pushing, pulling, carrying, and placing, in a safe and efficient manner. Package Handlers ("PH") may be assigned to or rotate through various areas and positions such as Loader, Unloader, Palletizer, Scan, Weigh, and Key ("SWAK"), Quality Assurance ("QA"), Facer, Tugger Operator, or Switcher, among others.

t.  **Parties**:  EEOC and FedEx Ground, collectively.

u.  **Party**:  Either EEOC or FedEx Ground.

v.  **Qualified Settlement Fund**:  The fund created pursuant to paragraph 32 for making payments to Charging Parties and Claimants.

w.  **Release**:  The releases described in paragraph 45, whose form is set out in Exhibits F and G.

x.  **Video**:  A recording of moving visual images used to convey information, including video, DVD, downloadable format, such as MP4, or streaming media.

y.  **VRI**:  Video Remote Interpreting, a sign language interpreting service provided remotely that uses audio-visual telecommunication equipment.

z.  **Wearable 3**:  A scanner device with built-in vibration capability currently being phased in for use at FedEx Ground Facilities.

## FINDINGS

9.      Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the Parties, the Court finds the following:

  a.  This Court has jurisdiction over this Action and over the Parties for the

term of the Decree;

  b.  Venue is proper; and

  c.  The Court shall retain its jurisdiction for the term of the Decree for the

purpose of entering all orders, judgments, and/or agreements that may be

necessary to implement and enforce the Decree.

10.  The Court, prior to entry of the Decree, has carefully examined its terms and finds

that such terms are adequate, fair, and reasonable, that the Decree conforms to the Federal Rules

of Civil Procedure and is not in derogation of the rights or privileges of any person or any party,

and that approval and entry of the Decree will further the objectives of the ADA.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**<u>SCOPE OF DECREE</u>**

11.  The Decree will become effective on the Effective Date and will remain in effect

until its expiration date, which will be two years after the Effective Date.

12.  All time periods specified in the Decree shall be computed in accordance with

Fed. R. Civ. P. 6(a)(1).

**<u>CLAIMS RESOLVED</u>**

13.  This Decree resolves all claims in EEOC's Complaint and Supplemental

Complaint. EEOC will not use the Charges identified in the Complaint or Supplemental

Complaint as the basis for filing any other claim or lawsuit against FedEx Ground, nor will

EEOC bring any ADA claim against FedEx Ground seeking equitable or injunctive relief or

damages for the Charging Parties identified in Exhibit A, the Claimants identified in Exhibit B,

or any other deaf or hard-of-hearing Package Handler or Package Handler applicant, based on an

allegation that before the Effective Date FedEx Ground discriminated against such individual based on hearing disability in the job application and hiring process and/or failed to accommodate any such individual's hearing disability while employed as a Package Handler, as alleged in the Complaint and Supplemental Complaint.

14.     Upon entry of the Decree the Court will dismiss the Action with prejudice, subject to the Court's retained jurisdiction to resolve any claims or disputes concerning the Decree and to enter any order, judgment, or agreement concerning implementation, enforcement, or amendment of the Decree.

15.     Except as provided in paragraph 13, nothing in this Decree affects, limits, or infringes EEOC's authority to investigate and process charges of discrimination or to file a civil action against FedEx Ground.

## INJUNCTIVE RELIEF

16.     The Parties agree that the purpose of the Decree and the intent of its provisions are to effectuate the ADA and, specifically, to ensure that deaf or hard-of-hearing applicants to, and/or employees in, the Package Handler position effectively receive work-related information, effectively participate in work-related meetings or communications, and otherwise are able to perform the essential functions of their jobs and enjoy equal benefits and privileges of employment, where such goals can be accomplished without undue hardship to FedEx Ground.

17.     FedEx Ground is enjoined from discriminating against deaf or hard-of-hearing Package Handlers and Package Handler applicants by:

        a.     Failing to provide effective reasonable accommodations that do not impose an undue hardship on FedEx Ground and that enable deaf or hard-of-hearing Package Handler applicants to participate fully in the application process,

and enable deaf or hard-of-hearing Package Handlers to perform the essential

functions of their jobs, and/or to enjoy equal benefits and privileges of

employment; and

b.      Taking adverse employment action against deaf or hard-of-hearing

Package Handlers or Package Handler applicants based on their hearing disability

and/or the need to make reasonable accommodation to such individuals.

18.      FedEx Ground is enjoined from retaliating against any individual, including but

not limited to applicants, employees, Charging Parties, or Claimants, because of such

individual's participation: in any EEOC process relating to the investigation of the Charges

identified in EEOC's Complaint and Supplemental Complaint; in the Action; or in any possible

enforcement proceedings with respect to the Decree. FedEx Ground is also enjoined from

retaliating against any Package Handler who has complained about or otherwise opposed

conduct reasonably believed to constitute discrimination against deaf or hard-of-hearing Package

Handlers based on their hearing disability, or for participation in any investigation, proceeding,

or hearing under the ADA regarding the same.

## POLICIES AND GUIDANCE

19.      Consistent with its Disability Accommodation Procedure (HMR-783, revised

June 20, 2019), FedEx Ground will continue to maintain the following procedure for determining

whether and how to accommodate deaf or hard-of-hearing Package Handlers and applicants to

that position:

a.      Engage in the interactive process with a deaf or hard-of hearing Package

Handler applicant or employee "when an accommodation is requested or FedEx

[Ground] is otherwise placed on notice that an accommodation may be needed";

b.      Document the interactive process and FedEx Ground's accommodation decision;

c.      Provide the completed forms documenting the interactive process and relevant decisions to the employee;

d.      "Follow up with the employee/applicant to ensure that the accommodation is meeting the needs of the employee/applicant" and "review and modify the accommodation if necessary."

20.     FedEx Ground will provide a description of its Disability Accommodation Procedure to applicants during the application process and, if hired, a description of the Procedure, with direction on how to obtain a copy of the Procedure, to Package Handlers during new-hire orientation or training.

21.     Within 60 days of the Effective Date, FedEx Ground shall make available a job aid for Managers to use in engaging in the interactive process with deaf or hard-of-hearing Package Handlers or Package Handler applicants. FedEx Ground will notify Managers and HR representatives about the job aid, and where/how to access the aid, in a Manager's Edition of the Daily Ground, Field News, and a Ground News communication to Human Resources. The Internal Monitor will approve the content of the job aid and direct or supervise an annual review of the aid to modify its contents as needed, including to address any findings as part of the Monitor's compliance review as required in this Decree. The job aid, which shall be in short form, shall provide at a minimum: (1) information concerning potential accommodations that are or could be available to deaf or hard-of-hearing Package Handlers or applicants, with cross-references and/or links to applicable FedEx Ground forms or guidance related to acquiring or providing such respective accommodations; (2) a description of FedEx Ground's Disability

Accommodation Procedure (HMR-783) with a cross-reference and/or link to a copy of HMR-783; (3) factors to consider in engaging in the interactive process with deaf or hard-of-hearing individuals and providing effective accommodation as necessary during continued employment to such individuals; and (4) contact information for the Internal Monitor and/or a designee with knowledge of the ADA, deaf or hard-of-hearing communication, and accommodative devices or services to provide particularized guidance to Managers on deaf or hard-of-hearing accommodation.

**SAFETY MODIFICATIONS**

22.     Within one year of the Effective Date, FedEx Ground shall ensure that visual warning light systems are installed and remain operational on all tuggers, forklifts, highlifts, and golf carts in its Facilities. This provision shall not apply to vehicles used outside of FedEx Ground's Facilities (including but not limited to trucks, vans, and switchers), or to vehicles operated by independent service providers or parties other than FedEx Ground (such as vehicles and equipment used in repairs or maintenance).

23.     Within one year of the Effective Date, in Facilities where it employs deaf or hard-of-hearing Package Handlers, FedEx Ground shall ensure that its employee alarm systems comply with local, state, and federal law.

24.     Within one year of the Effective Date, FedEx Ground will provide personal emergency notification devices to deaf or hard-of-hearing Package Handlers. FedEx Ground is currently researching devices, systems, and/or technologies, which may include scanners or company-issued pagers. FedEx Ground's selection process for the personal emergency notification device and system may include testing for scale and effectiveness. Upon selection of an emergency notification device and system, FedEx Ground will incorporate the device and

system into its emergency action plans, train Managers and deaf or hard-of-hearing Package

Handlers on the emergency notification device and system, and incorporate such training in new

employee orientation for deaf or hard-of-hearing Package Handlers.

## SCANNING EQUIPMENT

25.     Within 120 days of the Effective Date, FedEx Ground shall remind all Facilities

that deaf or hard-of-hearing Package Handlers have access to scanning equipment that provides

non-audible user cues or feedback (such as vibration) by communicating this information, and

how to acquire vibrating scanner equipment or use vibration functions, in the Manager's Edition

of the Daily Ground, Field News, and a Ground News communication to Human Resources. This

information will also be posted in a location in each Facility that is viewable by Package

Handlers. Within six months of the Effective Date and on an ongoing basis thereafter, FedEx

Ground will ensure that: (1) the Wearable 3 scanner (or any subsequent or replacement scanning

device with vibration) is available in all Facilities, and (2) all Wearable 3 (or subsequent

scanning device) applications used by Package Handlers that provide audible feedback will also

provide non-audible feedback (*e.g.*, vibration).

## COMMUNICATION ACCOMMODATIONS

26.     Within 120 days of the Effective Date and on an ongoing basis thereafter, all

Videos used by FedEx Ground to convey information to Package Handler applicants or Package

Handlers, including but not limited to Videos used during orientation and in training, shall

contain Captioning or another similarly effective communication method for Videos.

27.     Each Facility that employs a deaf or hard-of-hearing Package Handler shall

maintain or have access to a list of certified ASL interpreters available for provision of in-person

interpretation services for that Facility. The Internal Monitor shall approve a communication to

Facilities that employ deaf or hard-of-hearing Package Handlers of the requirement for the list. Facilities that employ deaf or hard-of-hearing Package Handlers shall annually confirm to the Internal Monitor or person(s) designated by the Internal Monitor that their list is up-to-date.

28.     FedEx Ground shall continue to make VRI available as a communication accommodation in Facilities that interview or employ deaf or hard-of-hearing Package Handlers.

a.     Within 60 days of the Effective Date, FedEx Ground will remind all Facilities of the availability of VRI equipment for accommodating deaf or hard-of-hearing applicants or employees, and the process for acquiring the equipment, in the Manager's Edition of the Daily Ground, Field News, and a Ground News communication to Human Resources. The Internal Monitor will thereafter oversee biannual reminders to all Facilities on the availability of and process for acquiring VRI equipment.

b.     FedEx Ground shall use best efforts to ensure adequate connectivity in Facilities in which VRI is used.

c.     The job aid described in paragraph 21 shall list VRI as a possible accommodation to use in communicating with deaf or hard-of-hearing Package Handlers.

d.     Nothing in this paragraph shall be interpreted to limit FedEx Ground's ability to adopt improved technologies in hardware or software related to VRI, or to change or modify its VRI services contract or vendor, provided that the availability of remote interpreting required by this paragraph is maintained.

## TRAINING

29.     Within 120 days of the Effective Date, FedEx Ground shall provide training for existing Managers and HR representatives authorized to engage in the interactive process with, or to participate in reasonable accommodation decisions for, Package Handlers. The training materials and platform shall be reviewed and approved in advance by the Internal Monitor.

  a.     The training shall cover, at a minimum:

  (i)     prohibition of employment discrimination and the duty to provide reasonable accommodations;

  (ii)    an explanation of reasonable accommodations;

  (iii)   a description of the interactive process, and the role of the Manager in the interactive process;

  (iv)    FedEx Ground's reasonable accommodation procedure and documentation requirements; and

  (v)     resources for the Manager to access to support the reasonable accommodation and interactive process, including the job aid for Managers discussed in paragraph 21.

  b.     This training shall be required of employees newly-hired or promoted after the Effective Date to a Manager or HR representative position authorized to engage in the interactive process or participate in reasonable accommodation decisions for Package Handlers, which training shall be provided within 90 days of hire or promotion, if not previously received by the individual.

30.     For the duration of the Decree, after the initial training, FedEx Ground shall provide annual refresher training to its Managers and HR representatives authorized to engage in the interactive process with, or to participate in reasonable accommodation decisions for, Package Handlers on the topics listed in paragraph 29. Managers who have had this training may

"opt-out" based on the results of a test demonstrating their knowledge of the material, in lieu of annual refresher training.

## POSTING

31.     Within 120 days of the Effective Date, FedEx Ground shall post at each of its Facilities in the locations where employment information is posted a copy of the Notice attached as Exhibit C. This Notice shall remain posted during the term of the Decree, and if a posted Notice becomes defaced or illegible, FedEx Ground shall repost it. FedEx Ground also will post the Notice on its intranet.

## MONETARY RELIEF TO CHARGING PARTIES AND CLAIMANTS

32.     Payments to Charging Parties and Claimants under this Decree shall be effectuated through an interest-bearing Qualified Settlement Fund (QSF), hereby approved by this Court consistent with Treasury Regulations § 1.468B-1 *et seq.* The QSF is created for purposes of resolving contested claims of liability in the Action, and the QSF will be subject to the continuing jurisdiction of the Court sufficient to satisfy the requirements of such Treasury Regulations. The QSF shall be managed and administered by a Fund Administrator selected by the Parties.

33.     Within 21 days of notice to the Parties from the Fund Administrator that the QSF has been established pursuant to the requirements of this Decree, with provision of wiring instructions and any necessary tax forms, FedEx Ground will make a qualified payment totaling $3,300,000.00 in monetary relief into the interest-bearing QSF account. FedEx Ground will notify EEOC in writing after it has completed payment into the QSF. This qualifying payment represents all funds paid in settlement of EEOC's claims in the Action.

34.     Distributions from the QSF to Charging Parties and Claimants will be made by the Fund Administrator solely at the direction of EEOC and consistent with a distribution process to be established by EEOC and communicated to the Fund Administrator, subject to the requirements of the Decree. EEOC shall have sole authority to determine each Charging Party's or Claimant's eligibility for, and the amount of, any payment from the QSF. FedEx Ground will not participate or have a role in determining distributions from the QSF, including eligibility for payments or the amounts of those payments.

35.     Payment of the Fund Administrator, including any fees and costs, will be made from interest earned on the settlement funds in the QSF. In the event this interest is insufficient to cover those fees and costs, they will be paid directly by FedEx Ground.

36.     If there are any additional unallocated funds remaining in the QSF after distributions to Charging Parties and Claimants, the Fund Administrator may, at EEOC's election and direction, extinguish the residual fund balance through a directed payment to the National Association for the Deaf or similar non-profit organization benefiting the deaf or hard-of-hearing. In no event shall there be any reversion of any part of the QSF funds to FedEx Ground.

## FUND ADMINISTRATOR

37.     FedEx Ground and EEOC will mutually agree upon a Fund Administrator to administer the QSF and distributions from it.

38.     No later than 60 days after the Effective Date, the Parties shall engage the Fund Administrator, who shall as part of the engagement contractually agree to accept the duties and responsibilities of the Fund Administrator set forth in the Decree and to commence its duties in accordance with this Decree and the instructions described herein. If the Fund Administrator

cannot perform its duties in a proficient manner at a reasonable cost, or otherwise must be replaced, the Parties will confer in good faith to select an alternate Fund Administrator. The Fund Administrator may also be changed by order of the Court.

39.     The Fund Administrator shall, as efficiently and on as reasonable a cost basis as possible: (a) secure a federal employer identification number ("FEIN") for the QSF; (b) establish an interest-bearing account with a reputable banking institution to hold all QSF funds; (c) issue and track notices and Releases related to Charging Parties and Claimants, with pre-paid return delivery where applicable; (d) issue and track payments from the QSF, in the form of checks, to Charging Parties and Claimants; (e) create and maintain a settlement website for this matter with information about the QSF, the payment and distribution process, tax consequence of payments, and the required Release; (f) create and maintain on the settlement website an ASL video approved by EEOC with such information and explaining the content of the notices and Releases; (g) maintain a representative knowledgeable about this matter, the QSF, and the distribution process to receive and respond to questions via a dedicated e-mail address and phone number that can be accessed by videophone and video relay service; (h) pay any taxes owed by the QSF from its funds, after taking all allowable deductions; (i) timely prepare and file with the required taxing authorities all necessary tax documents on behalf of the QSF, including those relating to earnings of and distributions by the QSF; (j) timely secure or issue all tax forms required to be secured or issued by the QSF; and (k) perform such other administrative tasks as necessary to facilitate the scope of work described herein.

40.     The Fund Administrator shall at all times ensure that the QSF is and remains qualifying under and compliant with applicable statutory provisions and regulations, including those at I.R.C. § 468B and Treasury Regulations § 1.468B-1 *et seq.*

41.     The Fund Administrator shall promptly notify the Parties when it has established the QSF and is prepared to receive the qualifying payment from FedEx Ground.

42.     The Parties shall cooperate with the Fund Administrator, as needed, to facilitate fulfillment of the Fund Administrator's duties.

## DISTRIBUTION PROCESS

43.     Within 60 days of receipt of notice from the Fund Administrator that it has established the QSF, EEOC shall transmit to the Fund Administrator and FedEx Ground a computer-readable list containing the full names, last known addresses, other contact information, and employed status for the Charging Parties and Claimants eligible for a monetary payment. Within 21 days of receiving the list, FedEx Ground shall provide more updated contact information or employed status information if it determines there is any inaccuracy in the information provided, as well as the Social Security numbers of the Charging Parties and Claimants. Upon request, FedEx Ground shall also provide the Fund Administrator with information reasonably available from its employment or payroll records, tax documents, or other available information. FedEx Ground will not challenge the eligibility of Charging Parties or Claimants.

44.     EEOC shall determine in its sole discretion the amount of the payments (if any) for each Charging Party and Claimant. EEOC's notice of determination of payments to the Fund Administrator shall specify and distinguish any portion of a payment for a Charging Party or Claimant designated as back-pay. Back-pay designations will be limited to the seven Charging Parties or Claimants for whom EEOC sought back-pay for failure-to-hire allegations as part of this settlement of the Action and shall not exceed a total of $216,559, the amount sought for back-pay as part of this settlement. The QSF is responsible for the payment of the employer's

share of payroll taxes or other obligations on such amounts (the "Employer's Share"). Prior to issuing monetary payments, the Fund Administrator will provide FedEx Ground written notice of back-pay designations and calculation of the Employer's Share. Within twenty-one days of the receipt of this information FedEx Ground shall make a payment to the QSF in the amount of the Employer's Share, which shall be separate from and in addition to the payment referenced in paragraph 33.

      a.     In exercising its discretion to determine whether and in what amount to approve distributions from the QSF for back-pay for a Charging Party or Claimant, EEOC will consider:

          (i)    the relevant hourly rate of pay during the relevant time period;

          (ii)   whether the job sought or held was full-time or part-time; and

          (iii)  mitigation efforts and interim earnings.

      b.     In exercising its discretion to determine whether and in what amount to approve distributions from the QSF for compensatory damages under 42 U.S.C. § 1981a to Charging Parties and Claimants, EEOC will consider:

          (i)    the Claimant's length of employment with FedEx Ground;

          (ii)   whether any claim of failed accommodation related to performing essential job functions or enjoyment of equal privileges and benefits of employment;

          (iii)  the number of work-related meetings and communications for which the Claimant allegedly did not receive effective accommodation;

          (iv)  the Claimant's requests for and efforts to secure effective accommodation; and

          (v)   the existence and extent of particularized harm claimed by the Claimant from allegedly not receiving effective accommodation.

45.     No Charging Party or Claimant will be issued any payment from the QSF under this Decree unless he/she first signs and returns to the Fund Administrator a properly executed Release, attached as Exhibits F and G, corresponding with the nature of his/her payment, and any tax documents deemed necessary by the Fund Administrator. The terms of the Release may not be altered in any manner. The Fund Administrator shall retain copies of the executed Releases and provide the originals to FedEx Ground promptly, preferably within 30 days of receipt, with copies to EEOC.

46.     EEOC shall develop and provide instructions to the Fund Administrator for a payment distribution process consistent with the requirements of the Decree and that provides for, *inter alia*:

> a.     Notification to a Charging Party or Claimant of eligibility for a payment using the Notices attached as Exhibits D or E corresponding with the nature of the payment;
>
> b.     Solicitation and securing of the required Release and any additional necessary information or tax documents from the Charging Party or Claimant;
>
> c.     Provision of executed Releases to FedEx Ground and EEOC;
>
> d.     Payment distribution(s) to Charging Parties and Claimants who have executed a Release;
>
> e.     Outreach to Charging Parties or Claimants whose returned Release, tax forms, or other documents are deficient;
>
> f.     Outreach to or for Charging Parties or Claimants who do not respond to Notifications or cash their payments, or whose Notifications or payments are returned or undeliverable; and

g.      Extinguishment of the QSF on or before the expiration of the Decree.

47.      Except for those payments and distributions specifically designated as back-pay wages by EEOC, the amounts distributed from the QSF to Charging Parties and Claimants constitute "compensatory damages" under the ADA and Civil Rights Act of 1991, 42 U.S.C. § 1981a. The Fund Administrator will issue applicable IRS Forms W-2 and 1099 based on the year in which such funds are paid to a Charging Party or Claimant, reflecting payments made from the QSF. Charging Parties and Claimants are solely responsible for all payee taxes associated with the payments.

48.      Following the initial distribution from the QSF, if funds remain in the QSF, including on account of Charging Parties or Claimants not returning required Releases or timely cashing their checks, EEOC may initiate additional distributions, provided however that such additional distributions are limited to those Charging Parties or Claimants who returned an executed Release and shall only be in the form of compensatory damages. EEOC may also direct the Fund Administrator to extinguish any unallocated or residual QSF fund balance through a directed payment to the National Association for the Deaf or similar non-profit organization benefiting the deaf or hard-of-hearing. The QSF must be extinguished prior to expiration of the Consent Decree.

## INTERNAL CONSENT DECREE MONITOR

49.      By the Effective Date, FedEx Ground shall appoint, and identify to EEOC by name, position, and contact information, a FedEx Ground executive, employed at least at the level of Vice President, as the Internal Consent Decree Monitor ("Internal Monitor") to oversee FedEx Ground's implementation of the terms of this Decree. The Internal Monitor shall possess the knowledge, capability, organizational authority, and resources to monitor and ensure FedEx

Ground's compliance with the terms of the Decree. The Internal Monitor shall also possess a reasonable base of knowledge regarding the ADA and human resources management. FedEx Ground shall assign the Internal Monitor the responsibility of monitoring and ensuring Decree compliance. FedEx Ground shall ensure that the Internal Monitor receives the training and assistance necessary to carry out his or her duties in a proficient manner. To the extent the Internal Monitor requires technical assistance to enable him or her to proficiently perform a specific function, FedEx Ground shall ensure that such assistance is provided by their own qualified personnel or, in the alternative, third-party consultants.

50.     To facilitate the work of the Internal Monitor, FedEx Ground shall create a Reasonable Accommodation Working Group within 30 days of the Effective Date to assist the Internal Monitor with his or her efforts to monitor and ensure Decree compliance.

51.     In the event the Internal Monitor's employment with FedEx Ground ends, the Monitor is promoted or transferred into a different position from which he or she can no longer serve as the Internal Monitor, or cannot continue to serve as the Internal Monitor for any other reason, FedEx Ground will, within 30 days, appoint another executive of comparable position who meets the qualifications stated in paragraph 49 to serve as the Internal Monitor, and shall provide notice to EEOC of the appointment.

52.     During the term of the Decree, the Internal Monitor shall have responsibility for:

a.      Evaluating whether FedEx Ground is meeting its obligation to engage and reasonably accommodate deaf or hard-of-hearing Package Handlers and applicants to the Package Handler position;

20

b.      Directing or supervising a biannual[1] review of records documenting internal and external complaints by deaf or hard-of-hearing Package Handlers and applicants to that position concerning failure to provide reasonable accommodation for hearing disability;

c.      Directing or supervising a biannual review of submitted accommodation forms and documentation for deaf or hard-of-hearing Package Handlers and applicants to that position, and any accommodation tracker;

d.      Directing or supervising a biannual review of information collected by FedEx Ground's application system concerning applicants who requested ASL interpreting as a reasonable accommodation to participate in the interview process;

e.      Directing or supervising an annual survey of the location of employment of deaf or hard-of-hearing Package Handlers;

f.      Directing or supervising a biannual review of utilization reports for VRI services to evaluate when and how often VRI services are being offered and used to accommodate deaf or hard-of-hearing Package Handlers and applicants to that position;

g.      Directing or supervising a biannual review of the provision of accommodations to deaf or hard-of-hearing Package Handlers and applicants to that position;

h.      Leading biannual meetings with the Reasonable Accommodation Working Group to evaluate information and data available to FedEx Ground regarding

---

[1] As used in this provision, biannual means twice yearly.

Decree compliance, including the information described in the above sub-parts; and

i.        Communicating with a person designated by EEOC regarding questions or requests by EEOC related to this Consent Decree and collaborating to resolve EEOC's questions or requests.

53.       Where information or data suggests shortfalls in engagement or accommodation of deaf or hard-of-hearing Package Handlers or applicants to that position, the Internal Monitor shall conduct or direct a good faith, reasonably diligent internal investigation into the circumstances in question to determine whether FedEx Ground's personnel are acting in compliance with the ADA, with FedEx Ground's policies and procedures, and with the requirements of the Decree; will provide, or work with the Reasonable Accommodation Working Group or other designees to provide, conclusions, feedback, and directives to Managers or other employees of FedEx Ground; and will take any other steps (directly or through designees) necessary to correct such shortfalls or otherwise facilitate compliance.

## REPORTING

54.       Upon fulfillment of the requirements specified in paragraphs 21 through 29 and 31, the Internal Monitor shall confirm to EEOC in writing the manner and method of compliance in the next report required by paragraph 55.

55.       The Internal Monitor shall provide a report to EEOC biannually verifying that FedEx Ground conducted its internal compliance review set forth in paragraph 52. The report shall include a description of any issues identified in the internal review and any steps taken to address those issues, the result of those steps, if any, and any steps to be taken in the future regarding the same or otherwise to promote Decree compliance. The report shall also include

22

compliance. The report shall also include copies of FedEx Ground's e-tracker accommodation database and copies of internal or external complaints by deaf or hard-of-hearing Package Handlers or Package Handler applicants concerning discrimination in the hiring process and/or failure to provide reasonable accommodation based on their hearing disability. The report shall be provided by the last business day in February and August during the term of the Decree.

## RECORDKEEPING

56.     For the duration of this Decree, FedEx Ground shall retain records of engagement in the interactive process with, and requests for or provision of reasonable accommodation to, deaf or hard-of-hearing Package Handlers and applicants. This Decree does not abrogate other recordkeeping requirements applicable to FedEx Ground.

## EXIGENT CIRCUMSTANCES

57.     The Parties recognize that FedEx Ground's operations may change in response to Exigent Circumstances, including in response to the COVID-19 pandemic. To the extent FedEx Ground is unable to comply with all or part of a term(s) of this Decree due to Exigent Circumstances, such non-compliance will not constitute a violation of the Decree. If FedEx Ground believes an Exigent Circumstance exists that renders FedEx Ground unable to comply with the Decree, FedEx Ground will notify EEOC as soon as practicable under the Dispute Resolution process of this Decree.

## DISPUTE RESOLUTION

58.     The Court retains jurisdiction to hear and resolve any disputes concerning enforcement of the Decree, which may be brought to the Court's attention by the application of either Party.

a.      Prior to initiating an action before the Court regarding the Decree, the moving Party shall initiate informal conferral by written notice (either via letter or e-mail) to the other Party and meet and confer regarding such notice within 14 days. If EEOC is the moving Party, such notice should be provided to the Internal Monitor and the Vice President of Litigation of FedEx Ground. FedEx Ground shall identify to EEOC the Vice President of Litigation by name and contact information prior to entry of the Decree and promptly notify EEOC if there is a change in the position.

b.      If informal meet and conferral does not resolve the dispute, the moving Party shall initiate formal conferral by written notice (either via letter or e-mail) describing the issues and claimed violations and afford the other Party 42 days to respond in writing to describe how the dispute has been or should be resolved. If EEOC is the moving Party, such notice shall be provided to the Internal Monitor and the Vice President of Litigation of FedEx Ground.

c.      The moving Party shall notify the other Party within 14 days of receipt of the response if the response fails to satisfy the moving Party's complaint. If EEOC is the moving Party, such notice shall be provided to the Internal Monitor and the Vice President of Litigation of FedEx Ground. The Parties may engage in further efforts at conferral during this period.

d.      If after service of the notice the Parties have not agreed to a resolution of the dispute, the moving Party may apply to the Court for enforcement of the Decree and any appropriate relief. Each Party shall bear its own attorneys' fees and costs.

## MISCELLANEOUS PROVISIONS

59.     If one or more provisions of the Decree are rendered unlawful or unenforceable by act of Congress or by decision of the United States Supreme Court, the Parties shall engage in reasonable efforts to amend the Decree in order to preserve or effectuate, in a lawful manner, the purpose or intent of the conflicting provision. In any event, all other provisions of the Decree shall remain in full force and effect.

60.     EEOC and FedEx Ground shall each bear their own attorneys' fees and costs in connection with the Action, including in any proceeding to effect and enforce the Decree.

61.     FedEx Ground shall provide a copy of this Decree as part of due diligence prior to any sale, merger, or transfer of assets to the purchaser or transferee, and to any other potential successor.

62.     Nothing in the Decree shall be deemed to create any rights on the part of any entity or individual, other than the Parties, to enforce the Decree. All rights concerning enforcement are vested exclusively in EEOC and FedEx Ground.

63.     When this Decree requires submission of notifications, reports, or other communications by one Party to the other, they shall be in writing, and unless the Parties specify differently, shall be by e-mail to:

      a.     For EEOC: Maria Luisa Morocco, EEOC Supervisory Trial Attorney, 131 M Street, NE, 4th Floor, Washington, DC 20507, maria.morocco@eeoc.gov; and Thomas D. Rethage, EEOC Senior Trial Attorney, 801 Market Street, Suite 1300, Philadelphia, PA 19107, thomas.rethage@eeoc.gov.

b.      For FedEx Ground: Rebecca Weinstein Bacon, Courthouse Place,

54 West Hubbard Street, Chicago, IL 60654, rweinstein.bacon@bartlitbeck.com;

Terrence Murphy, EQT Plaza, 625 Liberty Avenue, 26th Floor, Pittsburgh, PA

15222, tmurphy@littler.com; and Joseph Milcoff, 1000 FedEx Dr., Moon

Township, PA 15108, joseph.milcoff@fedex.com.

## SIGNATURES

**Agreed to in form and content:**

| **FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | **FOR FEDEX GROUND PACKAGE PACKAGE SYSTEM, INC.** |
|---|---|
| Sharon Fast Gustafson<br>General Counsel<br><br>Gwendolyn Reams<br>Associate General Counsel<br><br>*/s Debra M. Lawrence*<br>Debra M. Lawrence<br>Regional Attorney<br><br>*/s Maria L. Morocco*<br>Maria L. Morocco<br>Supervisory Trial Attorney<br><br>*/s Thomas D. Rethage*<br>Thomas D. Rethage<br>Senior Trial Attorney<br>Philadelphia District Office<br>801 Market St., Suite 1300<br>Philadelphia, PA 19107<br>267.589.9756<br>thomas.rethage@eeoc.gov | */s Joseph Milcoff* (w/consent)<br>Joseph Milcoff<br>Vice President of Litigation and Risk<br>FedEx Ground Package System, Inc.<br>1000 FedEx Drive<br>Moon Township, PA 15108<br>(412) 304-9762<br>joseph.milcoff@fedex.com<br><br>*/s Rebecca Weinstein Bacon* (w/consent)<br>Rebecca Weinstein Bacon<br>Bartlit Beck LLP<br>Courthouse Place<br>54 W. Hubbard Street<br>Chicago, IL 60654<br>(312) 494-4400<br>rweinstein.bacon@bartlitbeck.com<br><br>*/s Terrence H. Murphy* (w/consent)<br>Terrence H. Murphy<br>Littler Mendelson P.C.<br>EQT Plaza<br>625 Liberty Avenue, 26th Floor<br>Pittsburgh, PA 15222<br>(412) 201-7600<br>tmurphy@littler.com |

So ORDERED this ___18th___ day of _____May_____, 2020

_s/ Mark R. Hornak_____

Hon. Mark R. Hornak