**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EQUAL EMPLOYMENT OPPORTUNITY                     Civil Action
COMMISSION,

           Plaintiff,                                          No. 15-00256

LOURDES DEEB,

           Intervenor,                                        Judge Hornak

    v.

FEDEX GROUND PACKAGE SYSTEM, INC.

           Defendant.

_____\

## INTERVENOR'S PETITION FOR ATTORNEYS' FEES AND COSTS

Intervenor, Lourdes Deeb, by undersigned counsel, and pursuant to Fed.R.Civ.P. 54(d)(2), moves for an award of attorney fees and expenses pursuant to 42 U.S.C. § 12205, and in support states the following:

### I.      Background

The Complaint in this matter was filed on September 30, 2014 by the Equal Employment Opportunity Commission (D.E. 1) on behalf of seventeen Deaf employees of FedEx Ground. The undersigned counsel filed an intervenor's complaint (D.E. 52-1) on behalf of Terri Morhoff and Lourdes Deeb on July 9, 2015.  However, this matter and representation began many years before the filing of the initial complaint. Counsel's entry into the case was almost seven years after Morhoff and Deeb first filed their EEOC complaint.  Morhoff and Deeb first retained counsel on **March 5, 2009** for this matter, as they spoke with the undersigned, Matthew Dietz, on February 17, 2009, about not being provided any interpreters for their daily work meetings.  Ms. Deeb had

already filed her complaint in January 2008 (Charge No. 510-2008-01384) as did Ms. Morhoff (Charge 510-2008-01448), and both were in the process of investigation.

In 2009 and 2010, while the matter was under investigation, counsel amended the complaints, to add in other issues, as well as claims for retaliation for filing with the EEOC. During this time, the undersigned was advocating with the investigators in Miami, and advising them of the trial and decision of the Court in <u>EEOC v. Federal Express Corp</u>, Case No. WDQ-04-CV-03129 (N.D. Md. 2005), and how this issue of effective communication with the Deaf was a consistent problem with FedEx. Throughout this time, both Ms. Deeb and Ms. Morhoff were adamant that this was a problem for all Deaf employees of FedEx and wanted to make a difference, and did not want to obtain the right to sue and bring the case only on behalf of their own needs. The EEOC conducted a nationwide investigation while these claims were pending, and Ms. Morhoff and Deeb met with the investigators on several occasions.  The EEOC finally issued cause findings for both Ms. Deeb and Ms. Morhoff on September 26, 2012, approximately four years after they first filed their complaint, and after both were no longer working for FedEx.

Between September of 2012 and the filing of the EEOC complaint two years later, and as this matter was a class wide complaint involving all Deaf and hearing-impaired employees of FedEx ground, Ms. Deeb and Ms. Morhoff wanted to retain and retained the National Association of the Deaf to participate in their lawsuit – based on their status as the only organization in the United States that is a voice for the Deaf nationally. Notwithstanding, EEOC attempted to conciliate with FedEx and failure of conciliation as of December 23, 2013, and in which, EEOC continued to maintain that it had not decided if it was to bring a lawsuit on behalf of Ms. Morhoff or Ms. Deeb, or any of the other claimants.

From prior to the filing of the EEOC complaint, the intervenors were involved in the details of the complaints, the proposed relief, and had several strategy calls, and a meeting in Baltimore and Washington to strategize this matter with counsel from the EEOC. The intervenor complaint alleged the following: (1) FedEx discriminated against the intervenors on the basis of disability, and (2) FedEx denied reasonable accommodations and auxiliary aids and services to the intervenors. D.E. 52-1 at 6-9.  Even though they were no longer employed by FedEx ground, and they had filed their initial complaint seven years prior, they sought to intervene in the lawsuit so that FedEx would stop discriminating against persons who were Deaf, and implement policies and procedures that would ensure that such discrimination would not occur in the future.  DE  52-1, at 9.

Ms. Morhoff and Ms. Deeb maintained pristine documentation of every single note and communication provided to them in their employment and had voluminous records of every single daily meeting and text that were exchanged.  Ms. Deeb and Ms. Morhoff were good friends, co-workers, and attended each attorney meeting and phone conference together, and both participated in prosecuting this case.  Unfortunately, Ms. Morhoff tragically took her own life after being struck by a freight train on October 17, 2017. (D.E. 199)

In addition to monitoring the file and reviewing all of the documents following the filing, the discovery was separated into different phases, and the undersigned were required to ensure that the intervenors were kept up to date, and when the discovery process was up to the Florida workers, that the undersigned would take an active role as to all discovery and depositions of the South Florida activities of Defendant FedEx.  Prior to the specific discovery and depositions as to South Florida operations, the case resolved.  The case resolved in one of the largest settlements and wide-reaching of any case involving effective communication and the Deaf, as follows:

- A $ 3,300,000.00 settlement fund for all Deaf package handlers employed by FedEx (D.E. 376-1 at 13),

- Up to an additional $ 216,559.00 in back pay available to each of the seven claimants in this action (Id. at 16),

- A permanent injunction prohibiting FedEx from discriminating against package handlers or applicants who are Deaf (Id. at 6),

- A permanent injunction ensuring FedEx follow its interactive accommodation process (Id. at 7-8),

- The creation of materials and trainings modules for managers, HR personnel, and supervisors (Id. at 8-9),

- Safety modifications to the workplace regarding visual warning lights and emergency warning devices (Id. at 9),

- The procurement of equipment that provides non-audio feedback (Id. at 9-10),

- The addition of closed captioning or other effective communication methods to all videos (Id. at 10),

- The maintenance of a list of certified ASL interpreters (Id. at 10-11),

- The maintenance of VRI as a reasonable accommodation (Id. at 11),

- The training of managers and HR personnel regarding the above relief (Id. at 12),

- And a notice be posted in all facilities letting Deaf employees know their rights (Id. at 13).

Without the EEOC's involvement, this settlement would not have been as far-reaching and precedent-setting as it is; in addition, without the tenacity of claimants who are willing to wait twelve years before receiving any compensation or vindication of their rights, EEOC would not

have a case at all.  Due to the type of discrimination involved and lack of adequate defenses, Ms. Deeb's individual suit would have been long resolved within two years; however, the relief would not have been nearly so widespread without a collective action.  For representation of the intervenor and prosecution of her matter, counsel requests the following fees and costs:

Disability Independence Group, Inc.:

  Matthew W. Dietz  207.20 @ $ 415 = $ 83,161.50

  Lisa C. Goodman  21.5 @ $ 235  = $ 5,010.50

Elzer Law Firm, LLC:

  Christine T. Elzer  12.7 @ $350= $ 4,445.00

National Association of the Deaf, Inc.:

  Caroline Jackson  25.5 @$ 325  = $ 8,287.50

   TOTAL FEES DEMAND — **$100,904.50**

Total Costs: **$ 4,368.06**

## II. ENTITLEMENT TO FEES

"The ADA permits the award of a 'reasonable attorney's fee, including litigation expenses and costs' in the discretion of the court, to a 'prevailing party.'" <u>Equal Employment Opportunity Comm'n v. Hesco Parts Corp.</u>, 57 Fed.Appx. 518, 522 (3d Cir. 2003) (quoting 42 U.S.C. § 12205.) As the Intervenor was awarded both monetary damages and injunctive relief in the Consent Decree, there is no question that the Intervenor is a prevailing party. <u>See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res</u>., 532 U.S. 598, 603, 121 S.Ct. 1835, 1839, 149 L.Ed. 2d 855 (2001). Individuals affected by an EEOC suit should intervene to ensure their needs are being adequately met because the EEOC has no obligation to the client, and may have a position that is in fact detrimental to the client. <u>New York Gaslight Club v. Carey</u>, 447 U.S. 54,

68-70 (1980); see also <u>Hall v. City of Auburn</u>, 567 F.Supp. 1222, 1226 (D. Me. 1983). Moreover, so long as an intervenor is a prevailing party in a Title VII discrimination action, it has the same entitlements due to any prevailing party, including reasonable attorneys' fees and costs. <u>Id.</u>; <u>E.E.O.C. v. AutoZone, Inc.</u>, 934 F.Supp.2d 342, 349 (D. Mass. 2013); <u>E.E.O.C. v. Nutri/System, Inc.</u>, 685 F.Supp. 568, 572 (E.D. Va. 1988); <u>E.E.O.C. v. Sage Realty Co.</u>, 521 F.Supp. 263, 268 (S.D.N.Y. 1981).

The U.S. Supreme Court has held that absent special circumstances, a district court not merely "may," but "must" award fees to the prevailing plaintiff. <u>Independent Fed'n of Flight Attendants v. Zipes</u>, 491 U.S. 754, 761, 109 S.Ct. 2732, 2737-38 (1989); <u>Newman v. Piggie Park Enter. Inc.</u>, 390 U.S. 400, 402, 88 S.Ct. 964, 966 (1968). A plaintiff seeking attorney fees therefore need merely show that (1) she is a prevailing party and (2) the fee requested is reasonable. A plaintiff is considered a prevailing party for attorney's fees purposes if she succeeds on any significant issue in litigation which achieves some of the benefit she sought in bringing suit. <u>Farrar v. Hobby</u>, 506 U.S. 103, 109, 113 S.Ct. 566, 572 (1992); <u>People Against Police Violence v. City of Pittsburgh</u>, 520 F.3d 226, 232 (3d Cir. 2008). In <u>Farrar</u>, the court summarized the prevailing party standard as follows:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, Hewitt, supra, at 760, or comparable relief through a consent decree or settlement, <u>Maher v. Gagne</u>, 448 U.S. 122, 129, 65 L. Ed. 2d 653, 100 S. Ct. 2570 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. See Hewitt, supra, at 764. Otherwise the judgment or settlement cannot be said to "affect the behavior of the defendant toward the plaintiff." <u>Rhodes</u>, *supra*, at 4. Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. <u>Garland</u>, supra, at 792-793. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

Farrar, 506 U.S. at 111-12, 113 S. Ct. at 573 (emphasis ours). As the Third Circuit has stated, "[t]he Supreme Court has given 'generous formulation' to the term 'prevailing party' to reduce the financial burden on those seeking to vindicate important public interests that might otherwise be without an advocate," and "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Ward v. Philadelphia Parking Auth., 634 Fed.Appx. 901, 903 (3d Cir. 2015) (quoting Hensley v. Eckerhart, 461 U.S. 424 at 433 (1983)). However, when a plaintiff prevails on the central issue in the lawsuit, her attorneys should recover a fully compensatory fee. Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).

In her Intervenor's Complaint, Ms. Deeb lists seven discrete items in her prayer for relief ranging from permanent injunctions to back pay and monetary relief—five of which have already been agreed to in the Consent Decree. D.E. 52-1 at 10-11; D.E. 376-1 at 6-7 (permanent injunctions), 7-12 (policy modifications), 14-18 (monetary damages). The sixth item is the subject of this motion. Motion to Intervene at 11. As seen in her present complaint to the EEOC and her prior 2008 complaint, Ms. Deeb is primarily focused on systemic change, so the injunctions and policy modifications were more important to her than monetary relief. Even though she is no longer employed at FEDEX and will not benefit directly from the injunctions, Ms. Deeb still wanted this action to benefit others as well. D.E. 52-1 at 2.

### III.   ATTORNEY'S FEES

The intervenor is a prevailing party in this action and is thereby entitled to a fully compensatory award of fees and expenses. Ward v. Philadelphia Parking Auth., 634 Fed.Appx. 901 (3d Cir. 2015); Truesdell v. Philadephia Hous. Auth., 290 F.3d 159 (3d Cir. 2002). The starting point in determining fees to be awarded is to multiply the number of hours reasonably expended

on the case by a reasonable hourly rate, to arrive at what is termed the "loadstar" amount. Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The result of this computation is called the lodestar and is "strongly presumed to yield a reasonable fee." Washington v. Philadelphia Co. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996); Hensley, 461 U.S. at 434, 103 S.Ct. at 1939; see also Hahnemann University Hospital v. All Shore, Inc., 514 F.3d 300, 312 (3d Cir. 2008).

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984); Norman, 836 F.2d at 1299. Proof of prevailing market rates can be demonstrated in a number of ways, including affidavits of other attorneys or experts or citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases. Pub. Interest Research Grp. Of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995)

To meet her burden of proving the request for attorney fees is reasonable, the fee petitioner must submit evidence supporting the hours worked and the rates claimed. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1989), quoting Hensley, 461 U.S. at 433. The burden then shifts to the opposing party to "challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Id. at 1183; Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d Cir. 1989).

An intervenor cannot collect attorney's fees for work that is insufficiently documented, duplicative, excessive, or otherwise unnecessary regarding the work of the plaintiff's counsel. AutoZone, 934 F.Supp.2d at 348 (internal quotations omitted); see also Nutri/System, 685 F.Supp. at 573. When the Commission is a party, the intervenor must "make every reasonable effort to

ensure they do not unnecessarily duplicate the work done by the government plaintiff." <u>Sage Realty</u>, 521 F.Supp. at 269. If the intervenor's counsel works closely with the Commission, the court should discount all time unless there is a "convincing description of the division of labor." <u>Nutri/System</u>, 685 F.Supp. at 575 (citing <u>Furtado v. Bishop</u>, 635 F.2d 915, 922 (1st Cir. 1980)). While normally good practice, it is essential for intervenors' counsel to show a detailed account of work with dates, refrain from block billing, and ensure time recorded on specific activities be consistent between attorneys. <u>Id.</u>; <u>AutoZone</u>, 934 F.Supp2d at 349-50, 55-56.

In reviewing almost twelve years of time, counsel for the intervenors endeavored not to duplicate the work done by the EEOC.  In this matter there were almost 400 papers filed with the Court, complex discovery plan and tens of thousands of documents in five sets of requests for production, six rounds of interrogatories. The intervenors did not plan on engaging in detailed discovery until the Phase II field discovery of the Florida facility. Counsel also ensured that the time was not duplicative of each other.  Lastly, counsel reviewed the time carefully and removed all time that was solely related to Ms. Morhoff.

### A. Time and Labor Required/Novelty of the Issues

This matter dealt with issues that are novel and intricate. There is a paucity of employment case law involving the rights of Deaf people other than a few recent cases appealing dispositive motions, guidance from the United States Department of Justice, and analogies to other similar circumstances. As such, an immense amount of legal research, and analysis of same to determine the rights of the Plaintiff, the responsibilities of the Defendant, the procedural and discovery issues. Many hours were needed to ascertain what cases were even applicable to this matter, as well as researching regulations and statutory histories. Considering the total success of the Plaintiff herein, the plaintiff is entitled to 100% of the reasonable fees demanded. See e.g. <u>Windall</u>, 51 F.3d at

1185; Lohman v. Duryea Borough, 574 F.3d 163, 168 (3d Cir. 2009) ("The most critical factor [when assigning attorney's fees] is the degree of success obtained.") (quoting Hensley, 461 U.S. at 435).

Over the past 12 years to the present, Matthew Dietz has spent 207.2 hours on this matter and billed at $415 per hour. Further, Mr. Dietz shall expend additional twenty hours to conclude this litigation depending on the time expended when a reply is filed, and other matters involved in this fee litigation. DIG staff attorney, Lisa Goodman, spent 21.5 hours at $235. National Association of the Deaf (NAD) attorney, Caroline Jackson, spent 25.5 hours at $325 per hour. Local counsel, Christine T. Elzer spent 12.7 hours at $350 per hour.

**B. Skill Necessary**

The ultimate outcome evidences a higher level of skill required to understand the unique needs and capabilities of Deaf individuals. One example of the skill required when representing Deaf parties is ensuring that the concepts used in litigation are effectively conveyed in a language that is devoid of written words. Complex legal concepts must be relayed in American Sign Language, to a level which ensures informed consent and full understanding. This difficulty is compounded with the fact that there are very few interpreters that hold National Certification by the Registry of Interpreters for the Deaf which qualifies them to competently interpret legal terminology in American Sign Language. Moreover because Deaf people use ASL and not English, difficulties are present when the Deaf client must comprehend written legal documents, because often the English reading level of the Deaf client will not be sufficient to fully understand without extensive explanation on the part of the attorney. Because of these cultural issues, and the time commitment needed there are very few attorneys that represent Deaf people.

In addition, all counsel have extensive experience in litigating cases regarding effective communication with the Deaf.  In so doing, counsel understand the remedies that are required, effectiveness of the technology that is available, as well as what has been implemented in the past and what will be implemented in the near future.

Further, the issues involved are novel and require a substantial amount of research and interpretation of legislation and regulation, as well as searching for analogous situations. Disability Independence Group and Matthew Dietz are the only Florida-based counsel that is available to represent Deaf individuals in this type of matter. Disability Independence Group has two to three attorneys to handle active litigation, and as such, we often co-counsel with qualified disability rights counsel. Because of the paucity of qualified counsel that are available to represent Deaf people in the State of Florida, Attorney Dietz  reached out to the National Association of the Deaf who agreed to assist in the representation of Ms. Deeb. On behalf of his clients, he also retained Christine Elzer as local counsel familiar with the policies and procedures of this Court. Attorney Elzer focuses on employment law and has primarily represented employees in discrimination suits in her 12 years of practice.

### C. Reasonable Hourly Rate

The U.S. Court of Appeals for the Third Circuit has adopted the "community market rate" rule for determining a reasonable billing rate. <u>Student Public Interest Group v. AT&T Bell Lab.</u>, 842 F.2d 1436, 1447 (3d Cir. 1988) (hereinafter "<u>SPIG</u>"). The rule only requires "a number of representative affidavits from attorneys in the community who possess comparable qualifications and skill." <u>Id</u>. In <u>Washington</u>, the Third Circuit held that a requested fee was reasonable under the community market rate rule, based upon affidavits of other plaintiffs' civil rights attorneys in the community. <u>Id.</u>, 89 F.3d at 1036; see also, <u>Choike v. Slippery Rock University of Pennsylvania</u>,

2007 WL 3120097 at *3 (W.D. Pa. 2007) (Ambrose, C.J.); <u>Doe v. Township of Hampton</u>, 1996 WL 805073 at *6 (W.D. Pa. 1996) (Ziegler, J).

<u>SPIG</u> and <u>Washington</u> outline the type of evidence sufficient to establish a community market rate--affidavits of other plaintiffs' civil rights attorneys. In addition, the court may consider the fee applicant's current billing rates, <u>SPIG</u>, 842 F.2d at 1445,2 as well as decisions by other courts awarding fees to the same attorneys for similar work. See, <u>Black Grievance Committee v. Philadelphia Electric Co</u>., 802 F.2d 648, 652 (3d Cir. 1986); <u>Daggett v. Kimmelman,</u> 617 F. Supp. 1269, 1281-82 (D. N.J. 1985), affirmed, 811 F.2d 793 (3d Cir. 1987); <u>Windall</u>, 51 F.3d at 1185. As Third Circuit has recognized, in most cases, billing rates reflect market rates—they provide an efficient and fair short cut for determining the market rate, because the reasonable value of an attorney's time is the price that time normally commands in the marketplace, which is generally reflected in the attorney's normal billing rate. <u>SPIG</u>, 842 F.2d at 1445; <u>Black Grievance Committee,</u> 802 F.2d at 652. The stature of the attorney in the community, the trial experience he or she has acquired, and especially the fact that trial experience was acquired as a specialist in the very kind of case at issue, are highly relevant to determine the market rate the attorney commands. <u>Kennelly v. Lemoi</u>, 529 F. Supp. 140, 142 (D. R.I. 1981). Attorneys should be compensated at their current, as opposed to historical rates, in recognition of the delay in payment between when work was performed and fees paid. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 283-84 (1989).

Matthew W. Dietz has been practicing in the arena of civil rights litigation for his entire legal career. Having commenced the practice of law in September 1996, counsel's primary involvement in the federal arena has resulted in his being well versed in issues involving disability rights and other civil rights litigation. Having litigated or handled over 500 cases, Mr. Dietz concentrates his practice on complex disability law issues, including Title I, II, and III of the

Americans with Disabilities Act, Florida Civil Rights Act, Federal and Florida Fair Housing Acts, Individuals with Disabilities Education Act, Civil Rights Act of 1964, Civil Rights Act of 1865, Age Discrimination in Employment Act, and several other civil rights laws, regulations, and ordinances. Mr. Dietz has been class counsel in seven classes certified or conditionally certified under Fed.R.Civ.P. Rule 23(b)(2) involving disability rights.  Mr. Dietz is a nationally recognized speaker and authority on Disability Rights and has been involved in numerous Florida Bar committees. In 2019, he was given the American Bar Association's Paul G. Hearne Award, one of the highest honors a legal advocate for disability rights can receive. Mr. Dietz's hourly rate was $250.00 from 1998 until September 2001, when his rates increased to $300.00 per hour, on October 1, 2003, his rates increased to $350.00 per hour, on February 1, 2009, his rates increased to $ 385.00 per hour and on June 1, 2011, they were raised to $ 415.00 per hour. Mr. Dietz has been awarded fees of $350 per hour in <u>Herrin v. LaMachy Village</u>, 6:09-CV-1562-0ri-36KRS, RL v. Miami-Dade County School Board, 07-20321-CIV-LENARD/GARBER (5/17/2013), and <u>Bhogaita v. Altamonte Heights Condominium Assn</u>., 6:11-cv-01637 (7/24/2013). In those cases, fees were awarded at the contract rate at the time of the inception of the litigation of $350/hour. In this matter, the contract at the inception of litigation was $415.00 per hour. As demonstrated by the attached declaration of Mr. Dietz, the fees are reasonable in light of the operation and philosophy of his firm.  See Exhibit 1, attached herewith.

DIG's staff attorney, Lisa Goodman, has been a member of the Florida Bar since 2015. Additionally, Ms. Goodman is admitted in the Middle and Southern District Courts of Florida and United States Court of Appeals for the Eleventh Circuit. Ms. Goodman graduated cum laude from University of Miami School of Law in 2015. Immediately after becoming a member of the Florida Bar, Ms. Goodman joined DIG as a staff attorney. As a staff attorney, Ms. Goodman has litigated

and handled over 40 cases involving complex disability law issues, including Title I, II, and III of the Americans with Disabilities Act, the Rehabilitation Act, Federal and Florida Fair Housing Acts other civil rights laws, regulations, and ordinances. Ms. Goodman has co-authored two appellate briefs to the United States Court of Appeals for the Eleventh Circuit.

Co-Counsel Caroline Jackson is an attorney at the National Association of the Deaf (NAD). Ms. Jackson graduated from Stanford Law School in 2011 and went on to clerk for the Hon. R. Guy Cole, Jr., now Chief Judge of the United States Court of Appeals for the Sixth Circuit. She was admitted to the bar of the State of Maryland in 2012. Following the clerkship, she obtained a prestigious two-year fellowship from the Skadden Fellowship Foundation to practice law at the NAD. She continues to work for the NAD in a permanent capacity. She also teaches the Civil Rights of Persons with Disabilities Clinic at the University of Maryland Frances King Carey School of Law. In addition to legal credentials, Ms. Jackson has a strong history of working with the Deaf community. She first obtained an Associate's Degree in manual communication (another term for sign language) in 2002 and obtained the National Interpreter Certification (NIC) from the Registry of Interpreters for the Deaf in 2007. As demonstrated by the affidavit of Howard A. Rosenblum, attached hereto as Exhibit "2", Ms. Jackson has an extensive and qualified background and her fees and costs expended were reasonable.

Caroline Jackson's current practice focuses exclusively on protecting, preserving, and promoting the civil, human, and linguistic rights of Deaf and hard of hearing individuals in the United States. She has served as counsel in two federal jury trials regarding Deaf students' access to higher education. She has litigated cases across the country, in states such as New York, Maryland, Virginia, Indiana, Florida, Nebraska, Massachusetts, Tennessee and Louisiana, and in the District of Columbia. She has also litigated cases before the United States Courts of Appeals

for the Fourth and Eleventh Circuits. In addition to litigation, Ms. Jackson has published extensively on the rights of Deaf and hard of hearing individuals. Her Note, "The Individuals with Disabilities Education Act and its Impact on Deaf Education" published in the Stanford Journal of Civil Rights and Civil Liberties, was cited favorably by the United States Court of Appeals for the Eighth Circuit in Barron v. South Dakota Bd. of Regents, 655 F. 3d 787 (8th Cir. 2011). She also co-authored the Sixth Edition of Legal Rights: The Guide for Deaf and Hard of Hearing People from Gallaudet University Press. And she co-authored several entries in The SAGE Deaf Studies Encyclopedia by SAGE Publications.

Local Co-Counsel Christine Elzer is a 2008 graduate of the University of Pittsburgh School of Law. She graduated magna cum laude and was selected to the Order of the Coif. Throughout her nearly twelve years of practice, Ms. Elzer primarily represented employees in discrimination and other employment-related matters, as well as having served as an ADR neutral in employment matters since early 2016. Since January 2019, she has been the Chair of the Western Pennsylvania Employment Lawyers Association ("WPELA"), an affiliate of the National Employment Lawyers Association (NELA). Beginning in July 2020, she will be a member of the Executive Board of NELA. Ms. Elzer also served as WPELA's Amicus Committee Chair since 2013 and has served on NELA's Judicial Nominations Committee since 2013. She also serves on the Board of Directors of the Mediation Council of Western Pennsylvania (MCWP) and, since March 2020, has been the MCWP's first Information Officer. Ms. Elzer regularly presents on and writes articles regarding employment law for the Pennsylvania Bar Institute since 2010 as well as for national audiences for NELA. See Exhibit 3, attached herewith.

Charles A. Lamberton is a local attorney who practices in the Western District of Pennsylvania and an expert in the field of employment law. (Declaration of Charles A. Lamberton,

Exhibit 4). In his affidavit, he testifies that Mr. Dietz's hourly rate is "abundantly reasonable...and well within the range of market rates charged by comparable attorneys in the Pittsburgh legal market." Id. at 4. Ms. Goodman's and Ms. Jackson's rates are also well within local market rates. Id. Ms. Elzer's rate is below market rate because she "could walk into any law school and teach a class on employment law." Id.; see also Declaration of Colleen Ramage Johnston at 2 (Exhibit 5- Ms. Elzer's stated fee is reasonable given her experience).

### D. Preclusion of Other Employment and Use of Contingency Fee

Both DIG and the NAD are small non-profits with few attorneys on staff, who took this case exclusively on a contingency fee basis, not even asking the client to post costs. Silva v. Miller, 547 F. Supp. 2d 1299, 1305 ("The Court may also look to the contingent nature of the fee and the carrying costs counsel faces and adjust the hourly rate upward.") (citing Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir.1994)) (footnote omitted).

This case precluded all the primary attorneys from taking on other work because of the considerable resources required in working with a case **for over a decade**. See Black v. M.G.A., Inc., 51 F. Supp. 2d 1315, 1321 (M.D. Ala. 1999) (the "preclusion" factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."). DIG is a two-attorney firm with just one legal assistant. Thus, this case took considerable resources from DIG's entire legal team for the pendency of the litigation. The NAD has only three attorneys who focus primarily on litigation, two of whom work part-time. Attorney Elzer operates a one-attorney law firm, and worked on this case without being compensated to date.

Further, by taking this case on contingency, all firms placed themselves at risk of losing a substantial amount of resources. See Silva, 547 F. Supp. 2d at 1305. Not only did DIG and NAD assume the risk of losing fees if Ms. Deeb and Ms. Morhoff did not prevail, they assumed the risk of losing costs. Both DIG and the NAD took on this case without even asking the client to advance costs. The reason is simple: the populations they serve customarily live on a fixed income, relying on social security payments and government subsidies. Even clients who have gainful employment face barriers to advancing in their fields (such as the barrier FEDEX imposed upon the Intervenors by not providing interpreters). Therefore, they tend to have no ability to afford the costs incurred in litigation. To serve this population, DIG and NAD take on these costs and the risk of losing money spent on the costs of case, as well as foregoing compensation, unless they prevail on the merits.

### E. The Amounts Involved and the Results Obtained

The Consent Decree contains a range of reliefs ranging from permanent injunctions to damages that satisfy almost all of Ms. Deeb's prayers for relief found in her Motion to Intervene. See supra Section II. The total amount to be paid to the affected class is $ 3,300,000.00. Motion for Consent Decree at 13. The seven claimants can collect up to $ 216,559.00 in back pay on top of the compensation available to the class. Id. at 16.

As injunctive relief, FedEx will provide effective reasonable accommodations for Deaf or hard-of-hearing employees and will not retaliate against such employees when they make their needs heard. FedEx will amend its policies so that managers and HR representatives must engage in an interactive accommodation process, and they will have annual refresher courses. FedEx will follow up with the employee or applicant to make sure the accommodation is effective. FedEx will also provide applicants with its Disability Accommodation Procedure and create a job aid available

to managers for how to engage in the interactive accommodation process. FedEx will post notices in all facilities about the availability of ADA accommodations. To ensure the safety of Deaf and hard-of hearing employees, within one year, FedEx will install visual warning lights on all vehicles inside the facility, such as forklifts and golf carts, ensure that  alarm systems comply with local, state, and federal law, and provide them with a personal emergency notification device. FedEx will convey information to Deaf or hard-of-hearing applicants by adding closed captioning or other similarly effective communication methods to videos. Each facility that interviews or employs such employees will be required to maintain a list of qualified ASL interpreters and a VRI device.

In a similar case involving a Commission action against UPS, a Deaf employee was awarded only $ 95,000.00[1]. More recently, Dollar General reached a six-million-dollar settlement with the Commission for a class action regarding employment discrimination based on race.[2]

In <u>Farrar</u>, the court found that the degree of the Plaintiff's overall success goes to the reasonableness of a fee award and that the most critical factor is the degree of success obtained. Id. at 114, 113 S.Ct. at 574. In Justice O'Connor's concurrence in <u>Farrar</u>, she suggested three factors to consider in making the assessment: (1) the difference between the amount recovered and the relief sought; (2) "the significance of the legal issue on which the plaintiff claims to have prevailed"; and (3) whether the litigation accomplished a "public goal". 506 U.S. at 121-22, 113 S.Ct. at 578-79.

(1) The difference between the amount recovered and the relief sought.

(2) The significance of the legal issue on which the plaintiff claims to have prevailed.

---

[1] UPS Unit to Pay $95,000 to Settle EEOC Disability Discrimination Suit, E.E.O.C. (Dec. 14, 2011), https://www.eeoc.gov/newsroom/ups-unit-pay-95000-settle-eeoc-disability-discrimination-suit#:~:text=The%20EEOC%20had%20charged%20that,accommodation%20to%20a%20deaf%20employee.
[2] Dollar General to Pay $6 Million to Settle EEOC Class Race Discrimination Suit, E.E.O.C. (Nov. 18. 2019), https://www.eeoc.gov/newsroom/dollar-general-pay-6-million-settle-eeoc-class-race-discrimination-suit

(3) Whether the litigation accomplished a public goal.

**F. Undesirability**

Although many lawyers practice disability discrimination, few represent Deaf clients. Instead, they opt to enforce the aspects of the ADA that are strictly constructed; specifically, the aspects pertaining to physical accessibility. Therefore, Plaintiff would have difficulty finding a lawyer because even among disability rights attorneys, because few of them handle cases on behalf of Deaf individuals. Even fewer lawyers are willing to take on the additional cost of providing qualified sign language interpreters for all in-person client communication and advocating with opposing counsel and with the court to secure interpreters for depositions and court appearances.

Further, the risk of loss in any Deaf rights claim is significant, because most persons who are not Deaf cannot understand or associate with the barriers faced by persons who are Deaf, and may harbor significant misperceptions about the abilities, experiences, and needs of Deaf individuals. Successful litigation, therefore, requires the attorney not just to tell the client's story, but to educate the trier of fact more globally about the lived experience of Deaf people and the nature of the discrimination present in the case. In short, it is a difficult row to hoe.

Aside from Disability Independence Group, there are no other qualified attorneys in the State of Florida who could have handled the representation, and only a handful of qualified co-counsel than attorneys from the National Association of the Deaf. Due to the fact that Disability Independence Group litigates many cases, they often co-counsel with qualified co-counsel, Counsel took this case based on their desire to assist the Plaintiff in her right to be treated as a similarly-situated human being, which would otherwise go unaddressed.

## IV.     COSTS

The Americans with Disabilities Act provides for an award of litigation expenses and costs in addition to attorneys' fees. 42 U.S.C. 12205. Furthermore, prevailing parties in civil rights cases are generally entitled to recover any reasonable costs associated with litigating their claims, provided that the costs are necessary and properly documented. See <u>Becker v. ARCO Chem. Co.</u>, 15 F.Supp.2d 621, 635 (E.D.Pa.1998). District courts have broad discretion to award any costs deemed reasonable in such cases. See <u>In re Paoli R.R. Yard PCB Litig.</u>, 221 F.3d 449, 454 (3d Cir.2000).The inclusion of the term "litigation expenses, and costs" in the statute indicates that the intent was to make the statute much broader than simple "cost" statutes, and allows for the recovery of all litigation expenses as well. The total taxable costs in this matter are $ 4,368.06.  The expenses include solely those that are reasonable and customary, such as filing fees, postage, facsimile, mediation, interpreters, and courier expenses. *See* Dietz Declaration Exhibit 1-C.

## IV.     <u>CONCLUSION</u>

Intervenor, Lourdes Deeb, has properly asserted a claim for attorney's fees as the prevailing party under the Consent Decree and existing law. Therefore,  Intervenor respectfully requests that this Honorable Court award  $100,904.50  in reasonable attorney's fees, and $ 4,368.06 in costs incurred in the prosecution of this action.

Respectfully submitted,

/s/ Christine T. Elzer
Christine T. Elzer, Esq.
Elzer Law Firm, LLC
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Phone: (412) 230-8436
Fax: (412) 206-0855
*Local Counsel for Intervenors*

Matthew Dietz, Esq.
Florida Bar No.: 0084905
Disability Independence Group, Inc.
2990 Southwest 35th Avenue
Miami, FL 33133
Telephone: (305) 669-2822
Facsimile: (305) 442-4181
*Trial Counsel for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Intervenor's Petition for Attorneys' Fees and Costs was served upon all counsel of record via CM/ECF on this 8th day of June, 2020.

/s/ Christine T. Elzer
Christine T. Elzer